# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PHILLIP SCHARBER,<br><br>　　　　　　　　　　　Plaintiff,<br><br>v.<br><br>CUTTER HOLDING CO., d/b/a HondaJet Southwest, Cutter Aviation, Tower Industries, L.L.C., Cutter Southwest Aircraft Sales L.L.C., and Cutter Flight Management,<br><br>　　　　　　　　　　　Defendants. | Case No.: 16-CV-3045-JLS (WVG)<br><br>**ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**<br><br>(ECF No. 28) |

Presently before the Court is Defendant Cutter Holding Co.'s Motion for Summary Judgment, or in the Alternative, Summary Adjudication ("MSJ," ECF No. 28). Also before the Court are Plaintiff Phillip Scharber's Response in Opposition to the MSJ ("Opp'n," ECF No. 30) and Defendant's Reply in Support of Its MSJ ("Reply," ECF No. 31.) The Court heard oral argument on September 4, 2018. After considering the Parties' arguments, the evidence, and the law, the Court **DENIES** Defendant's MSJ.

## BACKGROUND

**I.      Plaintiff's Employment With Defendant**

Defendant sells new and pre-owned aircraft, as well as other aviation services and products. ECF No. 22-1 ("FAC") ¶ 3. Plaintiff began working for Defendant in January

2006 selling new and used aircraft. *Id.* ¶ 4. In October 2006, Honda announced it was entering the aircraft market and would be manufacturing a jet called the HondaJet. MSJ at 6.[1] Plaintiff was tasked with selling HondaJets and smaller-engine planes. *Id.* Plaintiff states he "sold" thirty-four HondaJets, but Defendant claims Plaintiff only took preorders for these jets and only eleven of the preorders remained tentatively viable in 2016. *Id.* at 6–7. In 2015, Plaintiff was asked to sell only the HondaJet and the Parties entered into an Employment Agreement (the "Agreement"), effective January 5, 2015.[2] FAC ¶ 6; *see* ECF No. 28-9 ("Agreement") at 44.

## II. The Agreement

By entering into the Agreement, Plaintiff became the Regional Sales Manager for the HondaJet in the territories of Southern California, Las Vegas, Nevada, and Hawaii. Agreement ¶ 1. Plaintiff's employment was at-will and could be terminated by Defendant at any time, with or without cause, for any or no reason. *Id.* ¶ 3.

Per the Agreement, Plaintiff would be paid 20% of the top half and 10% of the bottom half of the gross profit of the sale of each new HondaJet he sold. *Id.* ¶ 8; Def.'s Facts ¶ 4. The Parties agree that:

> The gross profit would be calculated by subtracting the cost of the new aircraft from the suggested selling price (SSP). The cost of the new aircraft would be calculated based on the manufacturer's net cost, plus a 1% reserve (the difference between the SSP and the cost of the plane from Honda constituted the margin, from which the salesperson would be paid). The Agreement also affirmed that the cost may include processing and promotional fees paid or credited to Cutter.

---

[1] Pin citations refer to the CM/ECF page numbers electronically stamped at the top of each page.

[2] The agreement is between Plaintiff and HondaJet Southwest ("HJSW"), one of Defendant's trade names. Defendant states that Plaintiff took multiple preorders for the HondaJet in 2006, but failed to secure a single HondaJet sale, which did not subsequently cancel, in the next ten years following this. MSJ at 7. In 2015, however, Defendant made Plaintiff its Regional Sales Manager for HondaJets in a designated sales territory. It is unclear why Defendant would enter into this agreement and give Plaintiff this responsibility if Plaintiff had failed to secure a single HondaJet sale since 2006, as Defendant alleges. *Id.*

Def.'s Facts ¶ 4. For example, if Plaintiff sold a HondaJet, with no sales discount, for $4,500,000, the company would make a profit of $500,000, meaning that Plaintiff would receive 10% of $250,000 (or $25,000) and 20% of $250,000 (or $50,000) for a total of $75,000. Agreement ¶ 8.

Under the terms of the Agreement, Plaintiff was eligible to be paid commissions if: (1) Defendant "is in receipt of full and complete payment on the aircraft"; (2) for a new aircraft, "management has determined that the aircraft is delivered into [its] area of responsibility, and that any holdback due from the manufacturer will be paid in full"; and (3) Plaintiff "is a full-time employee of HJSW, and is in good standing with the company at the time of the final delivery of the aircraft." *Id.* ¶ 16. Good standing was defined "as an employee that is not undergoing a Disciplinary Procedure as delineated in the Employee Policy and Procedures Manual which is provided to every employee." *Id.* If Plaintiff were to leave the company prior to the final delivery of the aircraft, he would "be due a partial commission based solely at the management's discretion." *Id.* If he were terminated for cause, he would "forfeit any right to payment for any commission or other compensation for any and all pending sales for which delivery has not occurred prior to the date of termination." *Id.*

Finally, the Agreement required the National Sales Manager to "discuss" performance issues with the Employee prior to termination:

> [I]f Employee's drive and motivation deteriorates to an unacceptable level, and/or if Employee demonstrates a drop in performance/profit and/or an unreasonable increase in expenses, the National Sales manager will discuss these deficiencies with the Employee. If immediate improvement is not noted, Employee may be subject to discharge.

*Id.* ¶ 3.

///

///

///

### III. Plaintiff's HondaJet Sales

Although Honda had projected delivery of the pre-ordered HondaJets in 2010, Honda repeatedly delayed delivery. ECF No. 30-1 ("Pl.'s Facts") ¶¶ 23–25.[3] As an interim measure to bridge the gap until the HondaJets were delivered and commissions for their sale were paid, Plaintiff was entitled to a "draw" against future commissions. Def.'s Facts ¶¶ 7–8, 49–50. Plaintiff and Mr. Cutter disagreed as to the interpretation of the contractual provision concerning the draw. Pl.'s Facts ¶¶ 36–39. Over Plaintiff's objection, Mr. Cutter cut off the draw in July 2016. *See id.*

Because of Honda's delays in delivering the HondaJets, Plaintiff had to "spend most of his time and effort preserving existing sales and impeded new sales" and many purchasers cancelled their orders. FAC ¶ 6. Plaintiff does not seem to dispute that he did not make any HondaJet sales in the years 2006 to 2016, but states that no other salesman made any sales of the HondaJet in 2015 or 2016. Pl.'s Facts ¶ 2. He also states that out of all of Defendant's salespeople, he obtained the most customer contracts to purchase HondaJets by far. *Id.*

Honda delivered the first jet on June 10, 2016, *id.* ¶ 34, and Plaintiff received his first full commission in nearly ten years of selling HondaJets soon thereafter. *Id.* ¶ 35. Plaintiff did not dispute the calculation of his first commission. Def.'s Facts ¶ 19.

Around this same time, Jerry Buesing, to whom Plaintiff had sold HondaJet Serial No. 28 in 2006, became frustrated by a delivery delay. *Id.* ¶ 62. Mr. Cutter therefore offered to sell Mr. Buesing Serial No. 15, which was Defendant's demonstrator HondaJet. *Id.* ¶ 63. Serial No. 15 included additional options, but Mr. Buesing paid the same price for Serial No. 15 as he had contracted to pay for Serial No. 28. *Id.* ¶ 64. Plaintiff's commission of $53,366.00 was calculated based on the suggested selling price of Serial

---

[3] Defendant has submitted its Separate Statement of Facts, to which Plaintiff has filed a Response. The Court's citation to "Facts" herein is to ECF No. 30-1, which is a chart containing Defendant's Facts and Evidence, as well as Plaintiff's Response, Facts, and Evidence. Citations to "Defendant's Facts" shall refer to "Defendant's Facts and Evidence," *see id.* at 2–234, while citations to "Plaintiff's Facts" shall refer to "Plaintiff's Additional Facts." *See id.* at 234–51.

4

No. 28. *Id.* ¶ 65.

## IV. Plaintiff's Complaints

On September 6, 2016, Plaintiff emailed Mr. Cutter about the commission on the sale of the Buesing jet, indicating his belief that the commission could have been based on the suggested selling price of Serial No. 15. *Id.* ¶ 66. In the email, Plaintiff noted that it was "[n]ice for the company and for [him] to finally begin to see some of [their] efforts over these last few years begin to pay off. Albeit 6 years later tha[n they] originally planned for." ECF No. 28-9 at 80. Mr. Cutter responded that he was "very disappointed as well. To not have any new sales in 10 years is beyond aggravati[ng]." *Id.*

Plaintiff also raised concerns that certain of his business expenses were not being paid. Def.'s Facts ¶¶ 68–69. On October 26, 2016, for example, Mr. Cutter told Plaintiff "[t]ough deal" and refused to reimburse certain of Plaintiff's expenses for a HondaJet delivery that fell through due to a component recall. *See* ECF No. 30-8 at 104. Not until after this litigation was filed did Mr. Cutter reimburse Plaintiff for all previously disputed, unpaid business expenses. Def.'s Facts ¶ 70.

## V. Plaintiff's Termination and Replacement

In late summer 2016, Michelle Hoover contacted Mr. Cutter regarding a potential sales position. *Id.* ¶ 73. Ms. Hoover corresponded with Mr. Cutter, and they met up at the Palm Springs Airshow between October 21 and 23, 2016. *Id.* ¶ 74. Mr. Cutter expressed to Ms. Hoover that he was frustrated with Plaintiff's sales performance. *Id.* ¶ 75. Mr. Cutter also believed that Plaintiff spent little time working at the Palm Springs Airshow, *see id.* ¶ 76, although Plaintiff claims he "worked as much or more than anyone, but few potential customers attended the air show." Declaration of Phillip Scharber ("Scharber Decl."), ECF No. 30-3 ¶ 50.

Following the Palm Springs Airshow, Mr. Cutter spoke with Defendant's Chief Financial Officer, Steve Priser, and Human Resources manager, Heather Wahl, about the possibility of terminating Plaintiff. Def.'s Facts ¶ 78. Ms. Wahl cautioned Mr. Cutter that Plaintiff's employment contract explicitly required discussion of any perceived sales

deficiencies prior to termination. Pl.'s Facts ¶ 69.

During this time, Mr. Cutter also continued to correspond with Ms. Hoover, meeting with her in Arizona on October 27, 2016. Def.'s Facts ¶¶ 79–80. At their October 27, 2016 meeting, Mr. Cutter informed Ms. Hoover that he was considering bringing her on and letting Plaintiff go at the end of the year. *Id.* ¶ 80.

Nonetheless, because of a large industry tradeshow scheduled in Florida a few days later, Mr. Cutter, in consultation with Defendant's leadership team, terminated Plaintiff by telephone on October 28, 2016. FAC ¶ 7; Def.'s Facts ¶ 81. Ms. Hoover was hired to fill Plaintiff's position that same day. Def.'s Facts ¶ 81.

Plaintiff claims that he was never given any warning that his job was in jeopardy prior to termination. Pl.'s Facts ¶ 63. Mr. Cutter, on the other hand, asserts that he orally counseled Plaintiff about his lack of sales, but admits that he never put anything in writing. *Id.* ¶ 64. Plaintiff believes that any comments expressing frustration about the lack of sales focused on all HondaJet salespeople, not him personally. *Id.* ¶ 67.

**VI. The Severance Agreement and Ensuing Litigation**

As of October 28, 2016, Plaintiff "had nine deposit holders for the future delivery of a HondaJet." MSJ at 15. Upon termination, Defendant states Plaintiff was "offered a comprehensive severance package" that included "two months of salary" and a promise to pay Plaintiff commissions for all nine HondaJets that were expected to be delivered. Def.'s Facts ¶ 40. Plaintiff does not dispute that this offer was made, but objects to it for various reasons—including an allegedly illegal non-compete provision—and states it was not reasonable. *Id.* Needless to say, Plaintiff did not accept the severance offer. *Id.* ¶ 41.

Plaintiff estimates that he would have made approximately $500,000 in commissions once the HondaJet deliveries were finally made. Pl.'s Facts ¶ 35. Because Mr. Cutter no longer needs to pay these commissions to Plaintiff, he has been able to pocket that money. *Id.* ¶ 73.

On November 17, 2016, Plaintiff filed a complaint in the Superior Court of California, County of San Diego. *See* ECF No. 1-2. Defendant removed to this Court on

December 16, 2016. *See* ECF No. 1. The Parties stipulated to Plaintiff filings a first amended complaint on May 24, 2017, *see* ECF No. 22, which alleges wrongful termination, violation of various sections of the California Labor Code, breach of contract, and breach of implied covenant of good faith and fair dealing. *See generally* FAC.

## LEGAL STANDARD

Under Federal Rule of Civil Procedure 56(a), a party may move for summary judgment as to a claim or defense or part of a claim or defense. Summary judgment is appropriate where the Court is satisfied that there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). Material facts are those that may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A genuine dispute of material fact exists only if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* When the Court considers the evidence presented by the parties, "[t]he evidence of the non-movant is to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255.

The initial burden of establishing the absence of a genuine issue of material fact falls on the moving party. *Celotex*, 477 U.S. at 323. The moving party may meet this burden by identifying the "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,'" that show an absence of dispute regarding a material fact. *Id.* When a plaintiff seeks summary judgment as to an element for which it bears the burden of proof, "it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (quoting *Houghton v. South*, 965 F.2d 1532, 1536 (9th Cir. 1992)).

Once the moving party satisfies this initial burden, the nonmoving party must identify specific facts showing that there is a genuine dispute for trial. *Celotex*, 477 U.S. at 324. This requires "more than simply show[ing] that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574,

586 (1986). Rather, to survive summary judgment, the nonmoving party must "by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts'" that would allow a reasonable fact finder to return a verdict for the non-moving party. *Celotex*, 477 U.S. at 324; *Anderson*, 477 U.S. at 248. The non-moving party cannot oppose a properly supported summary judgment motion by "rest[ing] on mere allegations or denials of his pleadings." *Anderson*, 477 U.S. at 256.

## ANALYSIS

### I. Evidentiary Objections

As an initial matter, both Parties have filed evidentiary objections. *See generally* ECF Nos. 30-4, 31-4. The Court first addresses Plaintiff's objection to Defendant's severance package offer. *See* ECF No. 30-4 at 2–3. As noted above, Defendant claims that when Plaintiff was terminated, he was offered his commissions in full per a severance agreement, but Plaintiff refused to accept the package. MSJ at 21. Plaintiff argues that this proposal included a requirement that Plaintiff release all legal rights and this offer is therefore inadmissible under Federal Rule of Evidence 408. Opp'n at 23; ECF No. 30-4 at 2–3.

Under Federal Rule of Evidence 408, evidence of offers "to compromise a claim which was disputed as to either validity or amount, is not admissible to prove liability for or invalidity of the claim or its amount." Fed. R. Evid. 408. Both Parties cite to *Cassino v. Reichhold Chemicals, Inc.*, 817 F.2d 1338 (9th Cir. 1987), to support their argument. *Compare* ECF No. 30-4 at 3 n.2, *with* ECF No. 31-1 at 3. In *Cassino*, the Ninth Circuit analyzed a situation where, as here, "an employment relationship [wa]s terminated and the employer offer[ed] a contemporaneous severance pay package in exchange for a release of all potential claims, including claims for discriminatory acts that may have occurred at or before the termination." 817 F.2d at 1343. The court noted that "[s]uch termination agreements are generally made a part of the record in the case and are considered relevant to the circumstances surrounding the alleged discriminatory discharge itself" and that "termination agreements . . . are probative on the issue of discrimination." *Id.* In this

situation, "the policy behind Rule 408 does not come into play." *Id.*

Such is the situation here. Defendant offered to pay Plaintiff severance in exchange for him giving up certain claims. Opp'n at 23. At the time, however, Plaintiff had not yet filed a claim against Defendant. Consequently, Rule 408 does not bar admissibility of the offer and the Court **DENIES** Plaintiff's objection to its admission.[4]

As to the remainder of the Parties' objections, *see* ECF Nos. 30-4, 31-4, the Court notes that "objections to evidence on the ground that it is irrelevant, speculative, and/or argumentative, or that it constitutes an improper legal conclusion are all duplicative of the summary judgment standard itself" and are therefore "superfluous" in the summary judgment context, as a "court can award summary judgment only when there is no genuine dispute of material fact." *Burch v. Regents of Univ. of Cal.*, 433 F. Supp. 2d 1110, 1119 (E.D. Cal. 2006); *see also Fonseca v. Sysco Food Servs. of Ariz., Inc.*, 374 F.3d 840, 846 (9th Cir. 2004) ("Even the declarations that do contain hearsay are admissible for summary judgment purposes because they 'could be presented in an admissible form at trial.'") (quoting *Fraser v. Goodale*, 342 F.3d 1032, 1037 (9th Cir. 2003)); *Hal Roach Studios, Inc. v. Richard Feiner and Co., Inc.*, 896 F.2d 1542, 1551 (9th Cir. 1990) (holding trial court's consideration of unauthenticated document on summary judgment was harmless error where a "competent witness with personal knowledge could authenticate the document"); *Burch*, 433 F. Supp. 2d at 1120–21 (noting even if a document is not properly authenticated, it is improper to raise an objection on that ground "if the party nevertheless knows that the document is authentic") (quoting *Fenje v. Feld*, 301 F. Supp. 2d 781, 789 (N.D. Ill. 2003)). As to the objections that are directed towards the weight of the evidence, this is an improper consideration on summary judgment. *See Strong v. Valdez Fine Foods*, 724 F.3d 1042, 1046 (9th Cir. 2013) ("[T]he weight of the evidence is an issue for trial, not summary judgment.").

---

[4] Plaintiff also argues this proposal included a non-compete provision which is illegal in California. Opp'n at 23. Plaintiff does not explain how this "illegal" provision renders the offer inadmissible.

The Court therefore **DENIES WITHOUT PREJUDICE** all evidentiary objections not specifically addressed in this Order, and the Parties are granted leave to reassert their objections at a later stage in the proceedings. *See Madrigal v. Allstate Indem. Co.*, No. CV 14-4242 SS, 2015 WL 12747906, at *8 (C.D. Cal. Sept. 30, 2015).

## II. Wrongful Termination in Violation of Public Policy

Plaintiff's first cause of action is for wrongful termination in violation of a public policy requiring payment of wages. *See* FAC ¶¶ 3–11. Plaintiff states that "Cutter fired Plaintiff to avoid paying him wages for earned commissions," *id.* ¶ 9, and that Plaintiff was fired "just before he had large commissions coming due." Opp'n at 17.

It is undisputed that Plaintiff's employment was at-will. Nonetheless, an "employer's right to discharge an at-will employee is subject to limits that fundamental public policy imposes." *Green v. Ralee Eng'g Co.*, 19 Cal. 4th 66, 71 (1998). To prevail, a plaintiff must show the policy at issue is fundamental, beneficial to the public, and embodied in a statute or constitutional provision. *Turner v. Anheuser-Busch, Inc.*, 7 Cal. 4th 1238, 1256 (1994). There must also be a nexus between the protected activity taken by a plaintiff and the allegedly adverse treatment by his employer. *Id.* at 1258.

California law requires that, "[i]f an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."[5] Cal. Lab. Code § 201. Indeed, if an employer discharges an employee "to avoid paying him the commissions, vacation pay, and other amounts he had earned, it violate[s] a fundamental public policy of this state." *Gould v. Md. Sound Indus., Inc.*, 31 Cal. App. 4th 1137, 1147 (1995).

Here, it is clear that Plaintiff repeatedly disputed his pay and reimbursement of expenses with Defendant. For example, Plaintiff disputed Mr. Cutter's decision not to pay

---

[5] Plaintiff also alleges a violation of California Labor Code sections 200 and 202. FAC ¶ 13. Section 200 is only definitional and provides that "wages" includes any amount earned on a commission basis. Cal. Lab. Code § 200(a). Section 202 only applies if the employee quits, which indisputably did not happen here. Cal. Lab. Code § 202(a).

further "draws" against future commissions in July 2016. *See, e.g.*, Pl.'s Facts ¶¶ 37–39. Plaintiff also disputed the amount of the commission he was paid on the sale of the jet to Mr. Buesing in September 2016, *see, e.g.*, *id.* ¶¶ 41–49, and expected additional commissions to be paid in the coming months following delivery of additional HondaJets. *See, e.g.*, *id.* ¶¶ 35, 73. Finally, Plaintiff also disputed Mr. Cutter's decision not to reimburse certain business expenses, *see, e.g.*, *id.* ¶¶ 50–56, with the latest complaint being only two days before Plaintiff's termination. *See, e.g.*, *id.* ¶¶ 56–57.

On these facts, the Court finds that there is a dispute of material fact as to whether Mr. Cutter fired Plaintiff "to avoid paying him . . . amounts he had earned," in violation of "a fundamental public policy of this state." *See Gould*, 31 Cal. App. 4th at 1147. The Court therefore **DENIES** Defendants' MSJ as to Plaintiffs' claim for wrongful termination in violation of a public policy.

### III. Violation of California Labor Code Section 98.6

The Court next addresses Plaintiff's claim for retaliation, which is asserted under California Labor Code section 98.6. Under Section 98.6, employers may not discharge or discriminate against an employee because the employee has "made a written or oral complaint that he or she is owed unpaid wages" or exercised "any rights afforded him or her." *See* Cal. Lab. Code § 98.6(a). "Summary judgment is not appropriate if a reasonable jury viewing the summary judgment record could find by a preponderance of the evidence that the plaintiff is entitled to a verdict in his favor." *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008).

"To establish a prima facie case of retaliation, a plaintiff must prove (1) she engaged in a protected activity; (2) she suffered an adverse employment action; and (3) there was a causal connection between the two." *Surrell v. Cal. Water Serv. Co.*, 518 F.3d 1097, 1108 (9th Cir. 2008); *Davis*, 520 F.3d at 1093–94. The Court finds that these elements are easily met here. As to protected activity, Plaintiff states he repeatedly and consistently disputed unpaid wages, including the guaranteed draw, commissions, and business expenses, *see* Opp'n at 24; consequently, Plaintiff has demonstrated he "made" a complaint under

Section 98.6 and was participating in a protected activity.[6] Further, Plaintiff's termination qualifies as an adverse action. *See Lewis v. United Parcel Serv., Inc.*, No. 05-cv-02820 WHA, 2005 WL 2596448, at *2 (N.D. Cal. Oct. 13, 2005) ("Under California law, an adverse employment action may be an ultimate employment action such as termination or demotion."), *aff'd*, 252 Fed. App'x 806 (9th Cir. 2007). Finally, regarding causation, Plaintiff must present evidence "sufficient to raise the inference that protected activity was the likely reason for the termination." *Davis*, 520 F.3d at 1094. "[C]ausation can be inferred from timing alone where an adverse employment action follows on the heels of protected activity." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002). Here, Plaintiff has demonstrated that he was fired two days after his most recent of numerous complaints about unpaid wages. Opp'n at 21. He states he was fired as a result of his complaints. *Id.* at 15. Plaintiff therefore establishes a prima facie case of retaliation.

Because Plaintiff has established a prima facie case, the burden shifts to Defendant "to articulate a nonretaliatory reason for terminating" Plaintiff. *Davis*, 520 F.3d at 1094. To meet this burden, the employer must explain why it selected the plaintiff in particular for the layoff. *Id.* Here, Defendant states that Plaintiff was "terminated for good faith, legitimate, non-retaliatory reasons rooted in his prolonged and continued failure to correct his languishing sales and performance related issues." MSJ at 18. Defendant states that Plaintiff procured minimal sales of HondaJets in a decade, procured dismal sales of pre-owned and brokered planes in 2015–2016, and that Mr. Cutter was frustrated with Plaintiff's lack of energy and drive. *Id.* Defendant claims that Plaintiff failed to develop new leads and attract buyers. *Id.* Defendant also points to the October 2016 Palm Springs Airshow, during which Mr. Cutter claims to have observed Plaintiff sitting under a tent rather than working to attract customers. *Id.* at 19. In contrast, Mr. Cutter says that he met

---

[6] The language in California Labor Code section 98.6 regarding making "a written or complaint that he or she is owed unpaid wages" was added to the statute in 2014. The Court finds the purpose of the statute, *i.e.*, protecting employees who make complaints about wages, is evidence that making an oral or written complaint is a protected activity.

Ms. Hoover in the summer of 2016, and that he believed she could make sales to high net worth individuals. *Id.* at 13, 19. On the same day that Mr. Cutter terminated Plaintiff, he hired Ms. Hoover to serve as Plaintiff's replacement. *Id.* at 19.

The Court finds that Defendant has met its burden of showing a legitimate reason for its challenged actions. Defendant has alleged that Plaintiff had poor job performance and was not driven to make new sales. Defendant claims that Mr. Cutter had found a replacement for Plaintiff whom Mr. Cutter claims he believed would be a better and more successful salesperson. *See Pinder v. Emp't Dev. Dep't*, 227 F. Supp. 3d 1123, 1148 (E.D. Cal. 2017) ("Poor job performance constitutes a legitimate, non-retaliatory reason for taking an adverse employment action.") (citing *Aragon v. Republic Silver State Disposal Inc.*, 292 F.3d 654, 661 (9th Cir. 2002)).

The burden therefore shifts back to Plaintiff "to raise a genuine factual question whether, viewing the evidence in the light most favorable to [him], [Defendant]'s reasons are pretextual." *Chuang v. Univ. of Cal. Davis, Bd. of Trs.*, 225 F.3d 1115, 1126 (9th Cir. 2000); *see also Davis*, 520 F.3d at 1089. Pretext may be proven "indirectly, by showing that the employer's proffered explanation is 'unworthy of credence' because it is internally inconsistent or otherwise not believable." *Chuang*, 225 F.3d at 1127. "As a general matter, the plaintiff in an employment discrimination action need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because 'the ultimate question is one that can only be resolved through a searching inquiry—one that is most appropriately conducted by a factfinder, upon a full record.'" *Id.* at 1124 (quoting *Schnidrig v. Columbia Mach., Inc.*, 80 F.3d 1406, 1410 (9th Cir. 1996)).

Here, the Court finds that Plaintiff has raised a genuine issue of material fact as to whether Defendant's claimed reasons for terminating Plaintiff are pretextual. Although Mr. Cutter testified that Plaintiff's job performance was poor, Plaintiff has introduced competing evidence that he had a reputation for being an enthusiastic, hardworking employee who obtained the most customer contracts to purchase a HondaJet and retained the commitment of the most customers for such sales. *See* Pl.'s Facts ¶¶ 9–20. Further,

although Mr. Cutter claims that he repeatedly counseled Plaintiff as to his inadequate sales performance, Mr. Cutter never put any sort of complaint regarding Plaintiff's performance in writing. *Id.* ¶ 64. Plaintiff also contests that any criticism was directed personally at Plaintiff rather than toward the sales team as a whole. *Id.* ¶¶ 65, 67. Mr. Cutter also claims that he told Ms. Hoover that he was considering letting Plaintiff go at the end of 2016, but instead he decided to terminate Plaintiff within the week, days after Plaintiff complained of unpaid wages and just as Defendant was on the verge of having to pay Plaintiff hundreds of thousands of dollars of commissions for which Plaintiff had been working for nearly a decade. *See id.* ¶¶ 35, 51–57, 62, 70. Plaintiff claims that his termination has allowed Mr. Cutter to pocket the substantial commissions that would otherwise have been payable to Plaintiff. *Id.* ¶ 73.

"Given this evidence, a factfinder could well decide to disbelieve [Mr. Cutter]'s explanation." *See Chuang*, 225 F.3d at 1127. The Court therefore **DENIES** Defendant's Motion for Summary Judgment on Plaintiff's claim for retaliation under California Labor Code section 98.6.

## IV. Plaintiff's Breach of Contract Claim

Plaintiff's FAC states that Defendant breached various parts of the Agreement, including requirements that Defendant: (1) provide Plaintiff with a "'protected' sales territory in Southern California, Clark County Nevada, Hawaii, and for certain specific sales in Arizona;" (2) "discuss unacceptable deficiencies in job performance prior to any discharge of employment;" (3) "pay Plaintiff a guaranteed amount of $100,000 as a draw against commissions until after the first 24 sales" of HondaJets;" (4) "pay commission according to a specific formula at the rate of 15% on sales of new aircraft, 20% on sales of pre-owned aircraft, and 20% on support fees paid by a manufacturer for a sale;" and (5) "promptly reimburse business expenses." FAC ¶ 16. Because Plaintiff no longer pursues theories 1, 3, or 5, *see* Opp'n at 28, the Court analyzes Plaintiff's claim based only on the alleged failure to warn of unacceptable job performance prior to termination and the alleged failure to pay commissions.

As to job performance, the Agreement states that, "if Employee's drive and motivation deteriorates to an unacceptable level, and/or if Employee demonstrates a drop in performance/profit and/or an unreasonable increase in expenses, the National Sales manager will discuss these deficiencies with the Employee. If immediate improvement is not noted, Employee may be subject to discharge." Agreement ¶ 3. As noted above, the Parties disagree as to whether Plaintiff was ever provided with negative feedback regarding his performance. *See supra* Section III. Because this creates a genuine issue of material fact, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's breach of contract claim on this theory.

Regarding the payment of commissions, Plaintiff also argues that:

> Cutter failed to pay commission as required following delivery to Plaintiff's customer of a demonstrator HondaJet, known as #15, in lieu of the new jet previously ordered by the customer but delayed as to delivery; also, Plaintiff anticipates Cutter will not act in good faith to reasonably exercise discretion in paying him commission on ten other sales awaiting delivery following his termination as required by section 16 of the employment contract.

FAC ¶ 8(d).

These issues have been addressed above, *see supra* Section II, and the Court has concluded there is an issue of material fact as to whether Plaintiff was paid the full commission owed under the contract for Mr. Beusing's jet. Consequently, the Court **DENIES** Defendant's Motion as to Plaintiff's cause of action for breach of contract.

V. **Plaintiff's Claim for Breach of the Implied Covenant of Good Faith and Fair Dealing**

Defendant argues that Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing is duplicative of his cause of action for breach of contract. *See* MSJ at 28. Plaintiff agrees as it relates to two of his theories, but states he "alleges for the first time that Cutter: (a) unreasonably exercised discretion to refuse payment of future commissions at the time of his termination, and (b) unreasonably insisted that he sign a

release giving up his rights and agreeing to an illegal non-compete provision in return for severance pay." Opp'n at 28 (citing FAC ¶ 22).

Every contract contains an implied covenant of good faith and fair dealing. *Cates Constr., Inc. v. Talbot Partners*, 21 Cal. 4th 28, 43 (1999). Performance in good faith requires the parties to be "faithful[] to an agreed common purpose" and to perform "consistent[ly] with the justified expectations of the other party." *Neal v. Farmers Ins. Exch.*, 21 Cal. 3d 910, 921 n.5 (1978). The covenant requires "that neither party do anything that will injure the right of the other to receive the benefits of the contract." *Habitat Trust for Wildlife, Inc. v. City of Rancho Cucamonga*, 175 Cal. App. 4th 1306, 1332 (2009). California courts determine what conduct meets those criteria on a "case by case basis" depending on the "contractual purposes and reasonably justified expectations of the parties." *Careau & Co. v. Sec. Pac. Bus. Credit, Inc.*, 222 Cal. App. 3d 1371, 1395 (1990).

Here, Plaintiff argues that Mr. Cutter exercised "sole[] . . . discretion" to pay the commissions and, "[b]y law, Cutter had an obligation to exercise its discretion in good faith." Opp'n at 29. Plaintiff further claims that "Cutter exercised this discretion in bad faith by conditioning payment on [Plaintiff] acquiescing to both a release of all his legal rights and a non-compete provision," requests that "violated California law based on Labor Code section 206.5(a) and California Business & Professions Code section 16600."[7] *Id.* At oral argument, Plaintiff indicated his belief that the severance offer was a sham that Mr. Cutter knew Plaintiff would be forced to reject. Defendant countered that Plaintiff did not attempt to renegotiate the severance offer or provisions Plaintiff found objectionable.

Although the Court was originally inclined to find that Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing is satisfactorily encompassed

---

[7] California Labor Code section 206.5(a) provides that "[a]n employer shall not require the execution of a release of a claim or right on account of wages due, or to become due, or made as an advance on wages to be earned, unless payment of those wages has been made." California Business and Professions Code section 16600 provides that, "[e]xcept as provided in this chapter, every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void."

16

by his breach of contract claim, the Court finds Plaintiff's arguments compelling. Plaintiff clarified at oral argument that his breach of contract cause of action does not encompass the failure to pay commissions on jets not paid for or delivered at the time of Plaintiff's termination, and that his breach of the implied covenant cause of action is predicated on Defendant's failure to exercise his sole discretion in good faith with regarding to payment of those commissions by, among other things, conditioning their payment on acceptance of provisions contrary to California law. Consequently, Plaintiff's cause of action for breach of the implied covenant of good faith and fair dealing is not duplicative of his cause of action for breach of contract. *See, e.g.*, *Longest v. Green Tree Servicing LLC*, 74 F. Supp. 3d 1289, 1301 (C.D. Cal. 2015); *Stewart v. Screen Gems-EMI Music, Inc.*, 81 F. Supp. 3d 938, 966 (N.D. Cal. 2015).

Further, the Court concludes that Plaintiff has raised a genuine issue of material fact, thereby allowing his cause of action for breach of the implied covenant of good faith and fair dealing to proceed to trial. Mr. Cutter testified at his deposition that he wanted to pay Plaintiff the commissions that were not yet due "[b]ecause there had been ten years of efforts on [Plaintiff's] part" and he "felt that was what Cutter Aviation in our culture . . . would do." ECF No. 28-7, Ex. 2 at 24:23–25:10. Plaintiff, on the other hand, testified that he "found [the severance agreement] insulting" . . . and "way too confining" because he "was signing away pretty much all [his] rights." ECF No. 30-6, Ex. 12 at 196:10–15. By signing the agreement, Plaintiff testified, he "couldn't . . . work in this industry . . . [or] bring suit," and he "was dependent upon getting commissions only as airplanes were delivered, and then [he did]n't know what the commission would be." *Id.* at 196:15–19. In short, Plaintiff "simply did not trust that they would live up to what they were promising." *Id.* at 196:20–21.

On this record, the Court must conclude that a genuine issue of material fact exists as to whether the severance agreement was offered in good faith. Accordingly, the Court **DENIES** Defendant's Motion as to Plaintiff's cause of action for breach of the covenant of good faith and fair dealing.

## VI. Plaintiff's Claim for Punitive Damages

Defendant also moves for summary adjudication of Plaintiff's prayer for punitive damages. *See* MSJ at 29. Under California law, a plaintiff is entitled to punitive damages if he can show by "clear and convincing evidence[] that the defendant has been guilty of oppression, fraud, or malice." Cal. Civ. Code § 3294. If the defendant is a corporation, the evidence must demonstrate that an officer, director or managing agent of the defendant committed, authorized or ratified an act of malice, oppression or fraud.[8] *Id.; see also White v. Ultramar, Inc.*, 21 Cal. 4th 563, 572 (1999). Summary judgment on the issue of punitive damages is proper only "when no reasonable jury could find the plaintiff's evidence to be clear and convincing proof of malice, fraud, or oppression." *Hoch v. Allied-Signal, Inc.*, 24 Cal. App. 4th 48, 60–61 (1994).

Plaintiff states that Defendant "acted toward Plaintiff with a conscious disregard of his rights and safety and with malice, fraud, or oppression so as to justify an award of exemplary and punitive damages under California Civil Code section 3294." FAC ¶ 11. Plaintiff argues there is substantial evidence to support an award of punitive damages here because Mr. Cutter "disregarded the legal rights of Plaintiff by firing him without notice, without any severance pay, because he dared to complain about how Cutter owed him guaranteed draw, commission, and reimbursement of business expenses" and fired Plaintiff "just as the commission payments came due with delivery of" the HondaJet. Opp'n at 30–31.[9]

/ / /

---

[8] Malice is defined as "conduct which is intended by the defendant to cause injury to the plaintiff or despicable conduct which is carried on by the defendant with a willful and conscious disregard of the rights or safety of others." Cal. Civ. Code § 3294(c)(1). "'Oppression' means despicable conduct that subjects a person to cruel and unjust hardship in conscious disregard of that person's rights." Cal. Civ. Code § 3294(c)(2).

[9] For the first time, Plaintiff makes arguments that Defendant wrongly fired him knowing he "had a history of cancer" and "in conscious disregard of Plaintiff's health . . . rights." Opp'n at 31. There is no mention of Plaintiff's health in his Complaint, and the Court therefore declines to consider this argument here.

As indicated above, *see supra* Section III, the motivation "in deciding to terminate [the plaintiff] is an inherently fact-intensive inquiry to be resolved by a jury." *McCullough v. Xerox Corp.*, No. 13-cv-4596, 2015 WL 5769620, at *11 (N.D. Cal. Oct. 2, 2015). Because the Court finds in this order that Defendant is not entitled to summary adjudication of any of Plaintiff's claims, the Court finds summary adjudication is likewise inappropriate as to Plaintiff's prayer for punitive damages. Accordingly, the Court **DENIES** Defendant's Motion for Summary Judgment as to Plaintiff's prayer for punitive damages.

## CONCLUSION

For the foregoing reasons, the Court **DENIES** Defendant's Motion for Summary Judgment (ECF No. 28). The Parties **SHALL** confer and submit a proposed schedule of pretrial dates and deadlines <u>within ten (10) days</u> of the electronic docketing of this Order.

**IT IS SO ORDERED.**

Dated: September 13, 2018

*Janis L. Sammartino*
Hon. Janis L. Sammartino
United States District Judge